The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 45 year old married male with a high school education, who did not have an antecedent history of significant problems with either knee prior to the 9 June, 1994 date in question. His other prior work experience has included working at Scott Aviation, at a tire store, for a manufacturer as a spray painter, at Mid-Carolina Telephone Company, in the automotive department of a Sears Roebuck, for Union County Public Works and at Forrest Hills High School as a bus driver and assistant teacher.
2. He is currently employed by Chambers Trucking as a driver, which does not require him to load or unload his vehicle or to continually get in and out of the same vehicle or to drive long distances. Since his injury plaintiff has also worked for Ross Breeders, as a driver, which involved driving long distances with a co-driver-driver, but similarly did not require him to load or unload his vehicle or to continually get in and out of it.
3. When injured plaintiff was employed by defendant-employer as a truck driver responsible for operating a fourteen foot box-type delivery truck not only requiring him to unload the same vehicle, but to continually get in and out of the vehicle in the course of making necessary deliveries.
4. In the process of making a delivery on June 9, 1994 plaintiff slipped and fell off the back of his truck landing primarily on his right side with his legs under him hyperflexing both knees not only resulting in the admittedly compensable right knee injury that has been subject of prior Industrial Commission Awards of temporary total and temporary partial disability, which materially aggravated the existing, but previously asymptomatic degenerative arthritis that he had developed in the same knee thereby proximately contributing to his ultimate disability; but a left knee injury as well.
5. Because he primarily landed on his right side and the symptoms of his resulting right knee injury were so severe plaintiff did not initially realize that he had also injured his left knee and did not initially report to defendant-employer or his treating physicians that he had injured the same knee when he fell or when he initially sought medical treatment for it.
6. From the time of his fall, however, plaintiff had also begun experiencing problems with his left knee, which were less severe than the ones with his right knee and did ultimately report the same symptoms to his principal treating physician by July 28, 1994, Dr. Timms, who had already been treating his more severely affected right knee since June 9, 1994 and elected to focus on it before treating his left knee.
7. When the diagnostic MRI of the right knee demonstrated the torn medial meniscus plaintiff sustained in the fall on June 9, 1994 Dr. Timms performed arthroscopic knee surgery in August of 1994.
8. In the interim, Dr. Timms had placed the right knee in a brace and plaintiff had begun using a cane to try to put pressure on the other leg, which aggravated his left knee injury resulting in episodes of the same knee locking up as well as catching on him. Because he had already scheduled surgery the following month on the opposite knee, Dr. Timms elected to focus on treating that knee and to keep an eye on the left knee that was not bothering him as much.
9. Following knee surgery Dr. Timms referred plaintiff to physical therapy involving quad exercises to not only strengthen the right knee, but the left one as well, which was still locking and catching, and the knee cap had also subluxed (slipped out of place) on several occasions. Because he was continuing to experience significant right knee problems, Dr. Timms also attempted to inject the same knee with an anesthetic steroid mixture.
10. Although he had neither reached maximum medical improvement and/or the end of the healing period from and following the injury by accident giving rise hereto nor was he able to return to his regular truck driving job; by August 19, 1994 plaintiff had sufficiently recovered from the same injury so as to be able to return to lighter part time sedentary work.
11. Because of his permanent leg injuries, plaintiff remains unable to return to his regular truck driving job. A functional evaluation determined his limitations, which allow lighter work with no lifting.
12. On or about March 10, 1995, Dr. Timms approved a lighter job as an order checker that did not involve significant lifting and which plaintiff attempted to perform. However, this job was found not suitable because it required him to be on his feet on a concrete floor in a cold produce warehouse. This aggravated plaintiff's symptoms, ultimately forcing him to resign from defendant's employment.
13. In April 1995, plaintiff began a job as a truck driver for Ross Breeders earning $450 a week, a comparable weekly wage to the one he earned as a truck driver for defendant. Although this job did not require him to load or unload the truck or continually get in and out of the truck; it did require driving long distances which aggravated his knee injuries, forcing him to resign from Ross Breeders. Plaintiff is currently employed by Chambers Trucking as a truck driver where he is not required to load or unload his vehicles, continually get in and out of the truck or drive long distances.
14. At the request of his attorney plaintiff was evaluated by Dr. Ward Oakley, another orthopedic surgeon, who does not recommend further right knee surgery or any other active medical treatment for his right knee injury; but rather, (recommends) that plaintiff restrict his activity within the limitations of his right knee discomfort, which he is already doing and was the principal reason for his changing truck driving jobs from Ross Breeders to Chambers Trucking.
Although Dr. Oakley does recommend that plaintiff undergo arthroscopic left knee surgery; plaintiff does not desire surgery; but rather, to live with his problem; therefore, he does not require active treatment for his left knee at this time either.
15. Thus, by the time he was evaluated for the involved knee injuries by Dr. Oakley on October 3, 1995 — if not before, plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the same injuries and as a result thereof retains a fifteen percent permanent partial disability of the right leg and a ten percent permanent partial disability of the left leg.
16. Immediately following the accident at work when he fell off the back of his truck plaintiff notified defendant-employer thereof by telephone. Therefore defendant-employer had actual knowledge of plaintiff's accident on the date of its occurrence, which it does not dispute and would have been a reasonable excuse for any failure of plaintiff to comply with the provisions of G.S. § 97-22 regarding formal written notice had the same employer not accepted liability thereby waiving any lack of notice defense under the same statute, but not the right to dispute any injuries for which liability was not accepted such as the left knee injury in dispute.
As plaintiff sought prompt, competent and continuing medical treatment from the date of his fall and it had actual notice of the same accident that day, defendant-employer was not prejudiced by the manner of notice of injury received, either in its ability to provide plaintiff with prompt, competent and continuing medical treatment or to timely investigate the circumstances of the same accident. Whether the fall also resulted in a left knee injury is separate and apart from the issue of whether defendant-employer had notice of the accident giving rise hereto, which it undisputedly did and, as previously stated, waived any right to contest the lack of notice of accident by acceptance of liability for the accident that resulted in plaintiff's undisputed right knee injury.
17. Neither the statute nor any case law of which the Full Commission is aware require plaintiff to give more than a singular notice of the accident giving rise hereto. The statute only requires notice of the ACCIDENT and defendant-employer not only had actual notice of the accident the same day, but cannot now dispute lack of Notice because of its acceptance of the claim arising out of the involved accident or to require that a new notice of accident be given for subsequently discovered injuries or ones that were not subject of the Voluntary Settlement Agreement giving rise to the Industrial Commission's prior original Award; however, this does not limit defendants from contesting whether a particular injury or condition arose out of the accident of which it was properly notified, which is a separate and distinct issue from notice.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On June 9, 1994 plaintiff sustained an injury by accident arising out of and in the course of his employment not only resulting in the admittedly compensable right knee injury that was subject of the Industrial Commission's prior Awards of temporary total and temporary partial disability, which materially aggravated his existing, but previously asymptomatic, degenerative arthritis in the same knee proximately contributing to his ultimate disability, but an injury to his left knee as well. G.S. § 97-26.
2. For the reasons stated in the above findings of fact, by the time he was evaluated for the involved knee injuries by Dr. Oakley on October 3, 1995 — if not before, plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the same injuries and as a result thereof retains a fifteen percent permanent partial disability of the right leg and a ten percent permanent partial disability of the left leg entitling him to fifty weeks of compensation at a rate of $250.01 per week commencing as of October 3, 1995. G.S. § 97-31(15).
3. For the reasons stated in the above findings of fact plaintiff has complied with the notice provisions of G.S. §97-22.
4. Defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the bilateral knee injuries giving rise hereto; however, for the reasons stated in the above findings of fact he does not currently require active medical treatment for either injury.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer shall pay plaintiff, on account of his resulting ten and fifteen percent permanent partial disability of the left and right legs respectively, fifty weeks of compensation at a rate of $250.01 per week commencing as of October 3, 1995. Such compensation having accrued the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant-employer shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the bilateral knee injuries giving rise hereto, however, for the reasons stated in the above findings of fact he does not currently require active medical treatment for either injury, when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendant-employer shall pay the cost, including as part thereof, the expert witness fees previously awarded Doctors Oakley and Timms for their deposition testimony to the extent the same have not already been paid.
 S/ _________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________ CHRISTOPHER SCOTT COMMISSIONER
S/ _________________ DIANNE C. SELLERS COMMISSIONER